UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMMIE WALKER-ASMUSSEN,

       Plaintiff,

v.                             Case No:  8:14-cv-681-T-DNF

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

## <u>OPINION AND ORDER</u>

This cause is before the Court on Plaintiff, Tammie Walker-Asmussen's Complaint (Doc. 1) filed on March 19, 2014.   Plaintiff, Tammie Walker-Asmussen seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.   For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

## I.   Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.   Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§404.1505, 416.905.   The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy.   42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911.   Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B.   Procedural History

On August 20, 2010, Plaintiff filed an application for disability, disability insurance benefits and supplemental security income asserting a disability onset date of January 1, 2004. (Tr. p. 111-114; 186-191)[1].   Plaintiff's applications were denied initially on December 27, 2010, and on reconsideration on April 12, 2011. (Tr. p. 111-114). A hearing was held before Administrative Law Judge Benjamin F. Parks on July 11, 2012.   (Tr. p. 39-78).   The ALJ issued an unfavorable decision on July 19, 2012.   (Tr. p. 21-33).   On January 15, 2014, the Appeals Council denied Plaintiff's request for review.   (Tr. p. 1-6). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on March 19, 2014.   This case is ripe for review.   The parties consented to proceed before a United States Magistrate Judge for all proceedings.   (See, Doc. 17).

### C.   Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.   *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)[2](citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe

---

1 Although unclear, it appears that at the hearing, the attorney for the Plaintiff amended the onset date to June 30, 2008.   (See, Doc. 22, p. 2, Tr. p. 41-44). Plaintiff's date last insured was June 30, 2006. (Tr. p. 205).

2 Unpublished opinions may be cited as persuasive on a particular point.   The Court does not rely on unpublished opinions as precedent.   Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. Ap. P.   Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).   The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.   *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the Social Security Act's insured status requirements through June 30, 2006. (Tr. p. 23). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2004[3], the alleged onset date. (Tr. p. 23).   At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: low back pain, asthma, and mood disorder, personality disorder and drug/alcohol abuse in partial remission citing 20 C.F.R. 404.1520(c) and 416.920(c). (Tr. p. 23).   At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. p. 24).   At step 4, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform less than light work such that, she can lift/carry up to 20 pounds occasionally; 10 pounds frequently, stand and/or walk 5 hours each in an 8-hour workday; sit 6 hours in an 8-hour workday with normal breaks; occasionally climb ramp/stairs, balance, stoop, kneel, crouch and crawl, but never climb ladders, rope or scaffolds; should have no concentrated exposure to vibrations, fumes, odors, dusts, gases, poor ventilation, hazardous machinery or unprotected heights; is able to understand, remember and perform simple, routine and repetitive

---

3 The ALJ used the original onset date of January 1, 2004, rather than the amended onset date of June 30, 2008.

tasks/instruction, but is limited to occupations with no more than occasional interactions with coworkers, supervisors, and the public.  (Tr. p. 25-26).  The ALJ decided that Plaintiff is capable of performing her past relevant work as housekeeper finding that this work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity ("RFC"). (Tr. p. 31).  In the alternative, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs in significant numbers in the national economy which Plaintiff is able to perform such as Mail Clerk, Produce Weigher, Electronic Worker, and Street Cleaner.  (Tr. p. 32).  The ALJ determined that Plaintiff has not been under a disability from January 1, 2004 through the date of the decision. (Tr. p. 33).

### D.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g).  Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356,

1358 (11th Cir. 1991).   The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

Plaintiff raises three issues on appeal.   As stated by Plaintiff, they are:

1)   The Commissioner erred, inasmuch as there were sufficient and significant inconsistencies in the Decision as to cause doubt that proper legal standards were applied.

2)   The Commissioner erred in assessing the credibility of the Plaintiff.

3)   The Appeals Council erred by failing to find that the medical records submitted constituted new and material evidence warranting reversal or remand of the ALJ's Decision.

### A.   Whether there were inconsistencies in the ALJ's Decision and whether proper legal standards were applied

Plaintiff argues that there were multiple instances where the ALJ was internally inconsistent or contradictory without supplying a reason for these inconsistencies or contradictions.   Plaintiff asserts that it is impossible to determine if this erroneous information tipped the scale toward an unfavorable decision.   As an example, Plaintiff contends that at one point the ALJ stated that the record is "devoid of any mental health treatment, in/out hospitalizations or counseling" (Tr. p. 30), yet the Decision contains many notes of the records from "Baker Acts" of July 2008, July 2009, and August 2011 (Tr. p. 28-29).   Plaintiff argues that even though the ALJ cited to these Baker Act incidents, the ALJ gave the impression that Plaintiff

was not hospitalized. Plaintiff also argues that the ALJ asserts there was no mental health treatment or counseling, yet notes that there was treatment at Northside Community Mental Health Center in 2008 and 2009 (Tr. p. 28-29). Plaintiff contends that she is taking psychotropic medication from her medical doctor indicating that she is receiving treatment. Plaintiff argues that she is receiving treatment from her primary treating physician which is paid by her family, and she has no health insurance which precludes her from obtaining more in-depth medical intervention for either her physical or mental conditions.

The Commissioner argues that the ALJ noted that Plaintiff was "Baker Acted" multiple times, but Plaintiff did not seek treatment or counseling from a mental health specialist during the time she is claiming disability.   The Commissioner contends that the ALJ did document that Plaintiff received psychotropic medication from her primary care physician, but Plaintiff did not seek any treatment from mental health specialists.   The Commissioner asserts that the emergency room visits and subsequent Baker Acts were drug-related incidents when Plaintiff took accidental overdoses of drugs. The Commissioner argues that the ALJ found Plaintiff not disabled based upon her ability to work and not based upon Plaintiff being noncompliant due to not being able to afford treatment.

A plaintiff bears the burden of proving he is disabled, and is responsible "for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing 20 C.F.R. §416.912(a)).   However, an ALJ "has a basic duty to develop a full and fair record."   *Id.* (citing 20 C.F.R. 416.912(d)). *See,* 20 C.F.R. §404.1545(a)(3) ("However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources").   This

duty applies whether or not the claimant is represented by counsel.  *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).

The ALJ made the following statement in his decision, "[d]espite her severe mental issues, the medical evidence of record is devoid of any mental health treatment, in/out hospitalizations or counseling.   The claimant has not attempted any recent treatment.   The record does not document any clinical evidence to show that the claimant is unable to maintain concentration, persistence or pace to the extent that it would cause any limitations in her ability to perform work activities." (Tr. p. 25).

The ALJ noted that following Plaintiff's imprisonment in July 2008, Plaintiff went to the Northside Community Mental Health Center for a psychiatric evaluation.   (Tr. p. 26).   The ALJ reviewed the mental health evaluation noting Plaintiff reported she had been clean and sober for nine months, and that the evaluation provided a diagnoses of history of panic disorder, OCD, a history of cocaine dependence currently in remission, generalized anxiety disorder, personality disorder and a Global Assessment of Functioning ("GAF") score of 54.   (Tr. p. 28). Plaintiff was prescribed medication, counseling and therapy.   (Tr. p. 28).   The ALJ noted that in January 2009, Plaintiff showed minimal progress as she had dropped out of treatment prematurely, but her GAF score had increased to 59. (Tr. p. 28). The ALJ noted Plaintiff was Baker Acted in June 2009, and evaluated as being alert and oriented in all spheres, cooperative and spontaneous, and stable with a diagnoses of depressive disorder, polysubstance dependence and a GAF score of 50.   (Tr. p. 28-29).   She was treated with Seroquel, Celexa and Librium. (Tr. p. 29).

The ALJ noted Plaintiff was Baker Acted in July 2010 following a pain medication overdose, and testing positive for cocaine, "benzos" and opioid use, but she left the hospital the next day against medical advice and received no medications or instructions. (Tr. p. 29). The ALJ

noted that in August 2011, Plaintiff was Baker Acted due to altered mental state.   (Tr. p. 29).

Plaintiff had admitted to abusing Vodka and taking extra pain medication, and she denied any

suicide attempt.   (Tr. p. 29). The ALJ found that the records showed Plaintiff tested positive for

drugs, but was oriented in all spheres, well-groomed, cooperative, good eye contact, normal

speech, pleasant, no suicide ideations, no hallucinations, no delusions and her insight/judgment

had improved.   (Tr. p. 29).   Plaintiff was diagnosed with depressive disorder, alcohol abuse, and

had a GAF score of 55.   (Tr. p. 29).   The ALJ noted that Plaintiff went to her treating physician,

Dr. Patel who treated her with psychotropic medication between January 2010 and May 2012, but

Dr. Patel did not report any significant mental abnormalities. (Tr. p. 29).

The ALJ reviewed the psychiatric evaluation of Jeremy Zehr, Psy.D. which occurred in

December 2010. (Tr. p. 29).   Dr. Zehr determined that Plaintiff was appropriately dressed and

groomed, was oriented in all spheres, no symptoms of psychosis, no hallucination, no delusions,

no ideas of suicide or homicide, good recall of recent and remote events, no short term or long

term memory loss, speech and thought process were logical and coherent, no problems with

articulation, and Plaintiff appeared in no acute mental distress and her cognitive functioning was

intact.   (Tr. p. 29).   The ALJ noted that Dr. Zehr diagnosed Plaintiff with bipolar disorder, not

otherwise specified, cocaine dependence, in sustained full remission, and a GAF score of 55.   (Tr.

p. 29).

The Court finds that the ALJ reviewed the record of incidents involving Plaintiff's mental

health issues.   The record shows that Plaintiff did receive minimal treatment upon release from

prison at Northside Community Mental Health Center, however, Plaintiff dropped out of the

treatment program. (Tr. p. 324, "This case is being closed, as the client has not been seen in

treatment since 9/23/2008.").   Plaintiff was hospitalized and Baker Acted multiple times for

overdosing on medication, however, none of the records indicate that she remained in custody for any length of time, or received any mental health treatment. (Tr. p. 303-320, 369, 503). Plaintiff's treating physician, rather than a mental health specialist was providing Plaintiff with her psychotropic medications. (Tr. p. 389). The ALJ's statement that the "medical evidence of record is devoid of any mental health treatment, in/out hospitalizations or counseling" is accurate in that Plaintiff failed to consult a mental health professional for any significant length of time to receive treatment and counseling, nor was she hospitalized for in-patient or out-patient mental health services, other than her very brief hospitalizations for drug overdoses and some of which lead to her being briefly Baker Acted.   The ALJ reviewed the medical records for Plaintiff's incidents of mental health episodes, and determined that these incidents did not result in Plaintiff receiving any significant mental health treatment or counseling whether from an in-patient or out-patient facility. The Court determines that the ALJ's Decision was not internally inconsistent or contradictory, and the Court is able to determine that the ALJ's one statement concerning the record being "devoid of any mental health treatment, in/out hospitalizations or counseling" did not erroneously tip the scale toward an unfavorable decision.

Plaintiff also asserts that the ALJ erred by finding Plaintiff had not sought treatment and did not consider that Plaintiff was unable to afford treatment, and was therefore excused from noncompliance. The Commissioner responds that the ALJ properly considered Plaintiff's treatment history and the record does not reflect that Plaintiff attempted to follow-up with the referrals to community resources which were provided to her.   If an ALJ relies on noncompliance as the sole ground for denying disability, then the ALJ must consider whether there is evidence in the record showing that the claimant is financially unable to comply with the prescribed treatment, and if so may not deny disability based upon noncompliance alone.   *Ellison v. Barnhart*, 355 F.3d

1272, 1275 (11th Cir. 2003), and *Neal v. Comm'r of Soc. Sec.*, 2011 WL 4356205, *2 (M.D. Fla. Aug. 22, 2011).   In the instant case, the ALJ did not base his decision solely on the fact that Plaintiff was noncompliant in seeking mental health counseling and treatment. The ALJ reviewed the medical records and noted that the mental health evaluations found Plaintiff to be stable, oriented, logical and in no mental distress.   Further, the ALJ noted that when Plaintiff was in counseling, Plaintiff failed to return and was discharged as a patient, and when Plaintiff was in the hospital, she was released generally within a day, or voluntarily chose to leave the hospital against medical advice.   The ALJ did not find that solely based on her noncompliance, Plaintiff was disabled.   The Court finds that the ALJ's Decision was supported by substantial evidence as to the first issue.

### B.   Whether the Commissioner erred in assessing credibility

Plaintiff argues that the ALJ used Plaintiff's activities of daily living to play a significant role in the determination of whether Plaintiff could engage in substantial gainful activities. Plaintiff claims that the ALJ found that Plaintiff had only mild restrictions in her activities of daily living because she reported that she was able to perform her personal care, do light housework, cook and prepare meals, go grocery shopping, watch television, travel, care for dogs, and was incarcerated. Plaintiff argues that her testimony showed that her abilities are much less than those found by the ALJ. The Commissioner asserts that the ALJ properly assessed Plaintiff's credibility using her activities of daily living as well as the whole record to make his assessment.

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain;

or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)).   After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence.   *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. [citations omitted] Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d at 1225.   "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).   The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are:   "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno v. Astrue*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (Tr. p. 29-30).   The ALJ also states that Plaintiff's objective laboratory and/or diagnostic findings of record do not support her allegations of pain and limitation.   (Tr. p.27). As discussed above, the ALJ carefully reviewed Plaintiff's mental health records.   He also reviewed Plaintiff's physical health records.   The ALJ noted that Plaintiff's complaints included a history

of low back pain and asthma.   (Tr. p. 27).   The ALJ reviewed the medical evidence from December 2008 and March 2009 of Plaintiff being admitted to the emergency room for chest pain and respiratory problems, but found that the objective medical evidence of chest x-rays were negative and the physical examinations revealed normal heart, chest and lungs, with a diagnosis of acute bronchitis.   (Tr. p. 27).   The ALJ reviewed the records of Plaintiff's treating physician, Mahendra Patel, M.D. who treated Plaintiff from January 2010 through May 2012.   (Tr. p. 27-28). The ALJ found that Dr. Patel documented no acute active respiratory distress or physical abnormalities. (Tr. p. 28). The ALJ reviewed Plaintiff's hospitalizations for back pain in October and November 2008, noting that Plaintiff showed no acute distress, walked with no physical abnormalities, had no spinal tenderness, had 5/5 motor strength, gait was negative and ambulated without difficulties. (Tr. p. 28). The ALJ noted that Plaintiff's treatment was prescription pain medication, which was also how Dr. Patel treated Plaintiff between January 2010 and May 2012. (Tr. p. 28). The ALJ found no objective medical tests showing significant physical or neurological abnormalities.   (Tr. p. 28).   The ALJ also referred to Robin R. Hughes, M.D.'s consultative examination completed in April 2011.   The ALJ noted that Dr. Hughes found Plaintiff had no abnormalities as to chest, heart and lungs, had no significant spinal abnormalities, straight leg raise test was negative, normal range of motion, tenderness in her left foot, no muscle atrophy, mild difficulty squatting and walking on heels and toes, and normal tandem gait. (Tr. p. 28).

The ALJ did include that Plaintiff wrote in her answers to the Function Questionnaire that she was able to perform personal hygiene, light household chores including cooking, went places, shopped as needed, watched television, interacted with others by telephone, and did mention that Plaintiff had multiple arrests and incarceration for prostitution to support her drug habit, drug

possession, grand theft, and probation violations. (Tr. p. 30). The ALJ also noted that no doctor indicated functional limitations resulting from Plaintiff's impairments.

The ALJ did not rely exclusively on Plaintiff's daily activities to determine her RFC.   The ALJ did consider Plaintiff's activities of daily living as one factor in determining Plaintiff's credibility as to her pain and as to her abilities. The ALJ also considered Plaintiff's convictions as a factor in determining credibility. *See, Steele v. Astrue*, 2009 WL 1748530, *8 (M.D. Fla. June 17, 2009).   The ALJ reviewed all of Plaintiff's medical records including noting that none of Plaintiff's physicians indicated that Plaintiff had the functional limitations that Plaintiff claimed. The Court finds that the ALJ's Decision was supported by substantial evidence in his determination as to Plaintiff's credibility, and the ALJ did not err in his credibility determination.

C.   **Whether the Appeal Council erred in failing by failing to find the additional medical records submitted to be new and material evidence warranting a remand**

Plaintiff argues that she submitted new evidence of a hospitalization that occurred from July 16-18, 2012 to the Appeals Council, and these records suggest that Plaintiff had a more severe mental illness than found by the ALJ.   Plaintiff contends that these hospital records show a diagnosis of major depressive disorder, recurrent, anxiety disorder with panic, opiate abuse, and a GAF score of 40 indicating severe limitations in occupational or social functioning. Plaintiff argues that if the ALJ had been aware of these records, his Decision would have been different. The Commissioner responds that the medical records submitted to the Appeals Council show another accidental overdose of prescription medication, and these records are similar to the medical records that were before the ALJ.   Further, the Commissioner asserts that the diagnosis

was completed by a nurse practitioner which is not an acceptable medical source and the ALJ would not have been required to accept this diagnosis.   The Commissioner contends that a GAF score is assessed on that one occasion, and a GAF score is not entitled to any relevant weight.

A claimant is generally permitted to present new evidence at each stage of his administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007), and 20 C.F.R. §404.900(b).   Evidence submitted for the first time to the Appeals Counsel is determined under a Sentence Four analysis. *Id.* An Appeals Council must consider new and material evidence that "'relates to the period on or before the date of the administrative law judge hearing decision' and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id.* (20 C.F.R. §§404.970(b), 416.1470(b)).   New evidence is considered material and thereby warranting a remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Id.*

The Appeals Counsel denied Plaintiff's request for review.   (Tr. p. 1).   The Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision." (Tr. p. 1).   The Appeals Council considered the following additional evidence which was not submitted to the ALJ: Medical Records from St. Joseph's Hospital, dated July 16, 2012 through July 18, 2012.   (Tr. p. 1, 5). The Appeals Council determined that the additional information produced did "not provide a basis for changing the Administrative Law Judge's decision."   (Tr. p. 2).

The additional medical evidence submitted to the Appeals Council is as follows.   On July 16, 2012, the Plaintiff was transported to St. Joseph's Hospital by EMS after Plaintiff was found on the floor by her daughter.   (Tr. p. 528).   Plaintiff was barely responsive but did respond after

being given Narcan, and Plaintiff denied an intentional overdose.   (Tr. p. 528). The record provides that Plaintiff was alert, oriented and cooperative, and in no acute distress.   (Tr. p 529). Plaintiff tested positive for oxycodone, cannabinoid, and Ecstasy.   (Tr. p. 530).   Her condition was considered stable.   (Tr. p. 530). Her diagnosis was "etiology unclear.   Possible related to intentional polysubstance abuse.   Would admit for now and observe.   Obtain neurology and psychiatry consult."   (Tr. p. 530).

Susan L. Roux, ARNP performed a psychiatric consult while Plaintiff was in the hospital. (Tr. p. 531). Plaintiff admitted to Ms. Roux that she ran out of her prescription for Soma and obtained a Fentanyl patch from a friend and wore the patch for a few days.   (Tr. p. 531). Plaintiff reported that she removed the patch in the morning, and then took a Lortab and Xanax and the next thing she knew, she woke up in the emergency room.   (Tr. p. 531). Ms. Roux found Plaintiff was alert and oriented, her mood depressed, anxious and emotional, her affect was guarded, flat, tearful at times, her insight was fair, her judgment was poor, and her memory impaired as to recent events but intact for remote events. (Tr. p. 531-32). Ms. Roux diagnosed Plaintiff with major depressive disorder, recurrent, anxiety disorder with panic, opiate abuse, and a history of crack cocaine abuse. (Tr. p. 532).   Ms. Roux advised Plaintiff that she would benefit from counseling and psychiatry, and recommended a social worker follow-up with options because Plaintiff had no insurance.   (Tr. p. 532). Ms. Roux indicated that rescinding the Baker Act should be considered in the morning pending medical clearance, and if Plaintiff was cleared that day, she should be transported to psychiatry.   (Tr. p. 532).   Ms. Roux acknowledged that Plaintiff was at risk for leaving against medical advice, and she indicated to Ms. Roux that she wanted to leave the hospital.   (Tr. p. 532).

The hospital records from July 16 to July 18, 2012, relate to the period on or before the date of the ALJ's hearing decision.   Plaintiff was hospitalized from July 16 to July 18, 2012, and

the ALJ's Decision was rendered on July 19, 2012, therefore, the hospital records do relate to a date on or before the date of the ALJ's Decision.   The Court must now determine if this new evidence is contrary to the weight of the evidence that the ALJ considered and if there is a reasonable possibility that this new evidence would change the administrative outcome.

The Court agrees with the Commissioner that a nurse practitioner is not an acceptable medical source, and Ms. Roux is a nurse practitioner. "A medical opinion from a nurse practitioner is not an 'acceptable medical source' under statute, but is an 'other source' which may be considered by the ALJ." *Owens v. Barnhart,* 2006 WL 4791709, at *3 (M.D. Fla. Aug. 16, 2006) (citing 20 C.F.R. § 404.1513).   The opinion of an "other source" cannot establish the existence of an impairment. *Id.*   "However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p.   Therefore Ms. Roux's findings cannot establish Plaintiff's impairment, but may be considered as another source and if based on special knowledge of Plaintiff may provide insight into the severity of her impairments.

Even if Ms. Roux was an acceptable medical source, the hospital records from July 16 through July 18, 2012 are repetitive of the medical records that were before the ALJ.   Plaintiff was hospitalized again for taking an overdose of medications.   She was transported to the emergency room.   Once given medication to counter the effects of the overdose, Plaintiff became alert, oriented and cooperative.   This medical evidence is similar to all of the other medical records that the ALJ did consider showing Plaintiff taking overdoses of medication, staying in the hospital or being Baker Acted briefly, and then released or voluntarily leaving.   Plaintiff has failed to show that this new medical evidence is contrary to the weight of the evidence that the ALJ considered or that there is a reasonable possibility that this new evidence would change the

administrative outcome. The Court finds that substantial evidence supports the Appeals Council's decision denying review.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the Commissioner is supported by substantial evidence.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).   The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on April 28, 2015.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties